**ATR WIRE & CABLE CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Intervenor.**

Nos. 83–5725, 83–5726.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1984.

Decided Jan. 9, 1985.

Jeffrey A. Belkin, argued, Millisor, Belkin & Nobil, Cleveland, Ohio, for petitioner.

Elliott Moore, Deputy Associate General Counsel, Kathleen Murray, argued, N.L.R.B., Washington, D.C., for respondent.

Herbert Segal, argued, Louisville, Ky., for intervenor Union.

Before EDWARDS and MARTIN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

This is the second time this case has been before this court. In the first instance, 671 F.2d 188, the majority of the panel reversed for a full hearing which had previously been denied by the Board at the time it certified the union and entered a bargaining order.

The present record before us demonstrates that the Board, on remand, assigned the case to an Administrative Law Judge for a hearing and that the ALJ conducted a thorough and careful hearing on all aspects of the company's contentions, thus fully complying with the mandate issued by the majority of this court.

After a four-day hearing, the ALJ in a lengthy opinion overruled ATR Wire and Cable Company's objections holding as follows:

It has long been held that the acts of third parties (particularly including employees who are not acting under the actual or apparent authority of the Union), are given less weight in determining whether or not conduct actually or potentially would affect the freedom of choice of employees. *Orleans Manufacturing Co.,* .120 NLRB 630 (1958). *Fabricut, Inc.,* 233 NLRB 1195 (1977).

In evaluating the acts relied on by the Respondent, I conclude that they are by and large trivial and of the type and character often found in connection with such a campaign, particularly one involving nearly 400 people. That is not to say that the acts and language used by these individuals is to be condoned. Rather, it is to accept the realities of the industrial setting and to note that antiseptic perfection is not a realistic possibility. Thus the test is whether employees were able to go to the polls and cast their votes without fear of intimidation, reprisal, or coercion. I conclude that here none of the acts complained about by Respondent were sufficiently severe so as to have

intimidated the free choice of fellow employees. The conduct here, as noted above, is similar to that found unobjectionable by the Board and the Sixth Circuit in *N.L.R.B. v. Bostik Division, U.S.M. Corporation,* [517 F.2d 971 (6th Cir.1975)].

Property damage is of course a serious matter. Nevertheless, the mere fact that employees, even pro-company employees, discover that their automobiles had suffered some minor damage prior to an election is not itself sufficient to establish a causal connection between the Union and the damage. This was a large parking lot, with many cars coming and going during the rotation of three shifts. Where there is a lot of movement in and out of a parking lot, some damage to automobiles is to be expected and indeed there was testimony of parking lot damage at times not immediately preceding the election here. Furthermore, the damage that was established by the Respondent was, except as to the hole in the radiator, insignificant—loosened battery and spark-plug cables, and small scratches. With regard to the hole in the radiator, it is unknown whether that in fact even occurred at the company parking lot.

In no case was there any testimony concerning who was responsible for the scratches, loosening battery and .spark plug cables, the flat tires, and the like. There is just simply no evidence linking the proven damage to automobiles to the Union or even to union supporters. Specifically, in the case of flat tires on John Montgomery's car, from his testimony it appears that such related to him as a supervisor.

Again, as in *N.L.R.B. v. Bostik Division, U.S.M. Corporation, supra,* that there was damage to automobiles of company supporters is not, without more, sufficient to justify setting aside the representational desires of a majority of the Respondent's employees.

The policy of the Act is to further collective bargaining if a majority of employees in an appropriate unit so choose.

The question here is whether the wishes of a majority of the Respondent's employees to bargain collectively should be set aside because of the actions of a few individuals. Should the validity of an election depend upon the subjective feelings of a few anti-union employees, even if those subjective feelings were real as to them? I conclude that the overwhelming case authority is to the contrary. Absent actual acts which would reasonably intimidate or coerce employees in the exercise of their votes, the wishes of a majority of employees should not be lightly set aside.

Thus the pre-election conduct established by the Respondent was trivial in the extreme. Neither singly nor in total could have these events realistically created an atmosphere requiring the election to be set aside.

The ALJ thereupon recommended to the Board that it reaffirm its order of May 1, 1980, that the respondent bargain with the union, the certification year to begin the date the respondent commences bargaining. The NLRB by supplemental decision and order thereafter affirmed the rulings, findings and conclusions of the ALJ and adopted his recommendation to reaffirm the original order.

Our review of this record indicates that the ALJ conducted a full and fair hearing and made detailed findings of fact all of which are supported by the record on all of the relevant issues. As this court held in *NLRB v. Bostik Div.,* 517 F.2d 971 (6th Cir.1975):

We are of the opinion that the Board did not abuse its discretion in concluding that "there did not exist at the time of the election an atmosphere of fear and reprisal rendering a free expression of ideas impossible."

*Id.* at 975.

Like the ALJ and the Board, we do not find in this record the sort of "general atmosphere of fear and coercion which prevented fair and free election" that this

court found in *Hickman Harbor Services v. NLRB*, 739 F.2d 214 (6th Cir.1984).

Enforcement of the Board's order is hereby granted.